In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-11-00430-CV
_____

## IN RE COMMITMENT OF NORMAN LEWIS EVERS

**On Appeal from the 435th Judicial District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-01-00860 CV**

## OPINION

Appellant, Norman Lewis Evers, filed a motion for rehearing after this Court issued a memorandum opinion in the appeal from his civil commitment as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2012) (the SVP statute). He complains that this Court did not sufficiently address his arguments, and he adds another argument. After considering his renewed challenges to the trial court's jurisdiction and the sufficiency of the evidence, we withdraw the memorandum opinion and substitute this opinion. *See* Tex. R. App. P. 47.1, 47.4. We hold that the trial court had jurisdiction over the subject matter despite appellant's parole status, and that the evidence is sufficient to support the jury verdict. The judgment of the trial court is affirmed.

1

We begin with Evers's argument in issue one regarding section 841.021 as an alleged statutory prerequisite to suit. He maintains that statutory prerequisites to suit implicate subject matter jurisdiction if they "'define, enlarge, or restrict the class of causes the court may decide or the relief that may be awarded.'" Evers relies in part on *Sierra Club v. Texas Natural Resource Conservation Commission*, 26 S.W.3d 684, 687-88 (Tex. App.—Austin 2000), *aff'd on other grounds,* 70 S.W.3d 809, 811, 814-15 (Tex. 2002). He asserts that the phrase "person's anticipated release date" in section 841.021 refers only to a person who is being released as a result of completion of his sentence, and not to someone like himself who is being released from prison on parole. *See* Tex. Health & Safety Code Ann. § 841.021 (West Supp. 2012). Evers argues this construction of the phrase serves to restrict the class of causes the trial court may decide in the SVP context, and as a result the requirement of an anticipated release date is a jurisdictional statutory prerequisite to suit.

The aim of statutory construction is to determine and give effect to the Legislature's intent. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). We review the construction of a statute *de novo*. *See Atmos Energy Corp. v. Cities of Allen*, 353 S.W.3d 156, 160 (Tex. 2011). A reviewing court looks first to the plain and common meaning of the statute's words. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). If the meaning of a statute is clear and unambiguous, the court defines the statute's words

according to their common meaning without resort to rules of construction or extrinsic aids. *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007). If a word acquires meaning by legislative definition or otherwise, the words in a statute are given their technical meaning. *Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 747 (Tex. 2012).

Section 841.021 sets out the pre-petition procedure the State is to follow in an SVP case:

> (a) Before the *person's anticipated release date*, the Texas Department of Criminal Justice shall give to the multidisciplinary team established under Section 841.022, written notice of the *anticipated release of a person* who:
> 　　(1) is serving a sentence for:
> 　　　　(A) a sexually violent offense described by Section 841.002(8)(A), (B), or (C);
> 　　　　. . . .
> 　　and
> 　　(2) may be a repeat sexually violent offender.
> . . . .

Tex. Health & Safety Code Ann. § 841.021(a) (emphasis added). Section 841.021(c) provides that at least sixteen months before the person's anticipated release date (barring exigent circumstances), TDCJ will give notice of that person's release to the multidisciplinary team so that the team can make certain specified assessments. *Id*. §§ 841.021(c), 841.022 (West Supp. 2012). The multidisciplinary team reviews available records of a person who may be a sexually violent predator. *See id*. § 841.022. The sixteen month period allows time for the commitment process to be completed before the person is released from the secure correctional facility. The statute does not distinguish between those anticipated to be released on parole and those anticipated to be released unconditionally as a result of completion of their sentences. *See generally In re*

3

*Commitment of Nicholas*, No. 09-08-00452-CV, 2010 WL 1795952, at **2-3 (Tex App.—Beaumont May 6, 2010, pet. denied) (no distinction under section 841.005 between those on parole and those still incarcerated).

The phrase "anticipated release date" is not expressly defined in Chapter 841, and sections 841.021 through 841.023 (the statutes governing the pre-petition administrative process) do not suggest that the phrase has a technical meaning. *See* Tex. Health & Safety Code Ann. §§ 841.021, .022, .023 (West. Supp. 2012). Evers relies on a dictionary definition of "release": "action of liberation or setting free from confinement or restraint." Evers narrows the definition and gives it a meaning not reflected in the statute. "Release" in Evers's view means release from prison, but only those released from prison because of completion of the sentence. He contends that the phrase does not encompass those released on parole, because parole is a form of restraint during which a parolee is still considered to be serving his sentence. As a parolee, he argues, he is still under restraint and he does not have an anticipated release date, or at least not one that is imminent.

The statute does not indicate that the word "release" in the phrase "anticipated release date" has that narrow meaning. *See* Tex. Health & Safety Code Ann. § 841.021. In the context of section 841.021(a) and a person in prison, the language refers to the release of the person from the secure correctional facility. *Id*.; *see also* Tex. Health & Safety Code Ann. § 841.081(a) (West 2010). When it appears that the inmate is

4

approaching the time of release from a secure correctional facility, TDCJ must notify the multidisciplinary team so that the team can make the section 841.022(c) assessments about the person.

The legislative history to Senate Bill 29 (one of the bills addressing sexually violent predator issues) states, "Currently, sexually violent predators are being released from prison once they have served out their sentences even when criminal justice officials are confident that they will offend again." Senate Comm. on State Affairs, Bill Analysis, Tex. S.B. 29, 76th Leg., R.S. (1999). Although this explanation speaks of "served out their sentences," the language employed in the statute passed by the Legislature does not contain that wording. If the Legislature intended to limit civil commitment under Chapter 841 to only those persons completing their sentences and not on parole, we believe it would have done so expressly. *See generally Traxler*, 376 S.W.3d at 747; *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen.").

Moreover, when the Legislature adopts a provision that imposes a requirement but does not specify whether the failure to satisfy that requirement defeats the court's jurisdiction, a reviewing court presumes that the Legislature did not intend to make the provision jurisdictional. *See In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 307 (Tex.

2010). This presumption is overcome only by clear legislative intent to the contrary. *City of DeSoto v. White*, 288 S.W.3d 389, 394 (Tex. 2009). The Texas Supreme Court has explained that we are to look at the statutory provision itself to ascertain whether the statute provides clear legislative intent that it is jurisdictional. *See id.* Section 841.021 does not provide, or even suggest, that the provision is jurisdictional, nor does the statute specifically mandate that an anticipated release date is a prerequisite to suit. *See id.* at 395. Section 841.021 does not indicate that the consequence of noncompliance would be dismissal of the petition. *See generally In re United Servs. Auto. Ass'n*, 307 S.W.3d at 308; *see also, e.g., In re Commitment of Hall*, No. 09-09-00387-CV, 2010 WL 3910365, at **1-3 (Tex. App.—Beaumont Oct. 7, 2010, no pet.) (Chapter 841's requirement that defendant be a "repeat sexually violent offender" is not jurisdictional.); *In re Commitment of Robertson*, No. 09-09-00307-CV, 2010 WL 3518509, at **12-13 (Tex. App.—Beaumont Sept. 9, 2010, pet. denied) ("Nothing in sections 841.021, .022, .023, or .041 indicates that the Legislature intended to divest the trial court or this Court of jurisdiction if the person is convicted of another offense after the State files a petition seeking civil commitment.").

Also, section 841.006 suggests that section 841.021's requirement of notice to the multidisciplinary team, which is triggered by the anticipated release date, is not intended to confer a right to the individual or to form the basis for a challenge to the commitment. *See* Tex. Health & Safety Code Ann. § 841.006 (West 2010). Section 841.006 provides

6

that a committed person does not have a "cause of action" under Chapter 841 for failure to give notice within the required period. *Id.* Section 841.021(c) provides that under exigent circumstances, the Department can provide the notice to the multidisciplinary team at any time before the anticipated release date. *See id.* § 841.021(c).

In conjunction with his statutory construction argument, Evers references statutes concerning parole from the Government Code, and asserts that the "comprehensive statutory parole law scheme in Chapter 508 . . . is further evidence that the Legislature did not intend for the civil commitment provisions in Chapter 841 . . . to apply to a parolee or to someone about to make parole[.]" *See* Tex. Gov't Code Ann. §§ 508.001-.324 (West. 2012). Chapter 841 ("Civil Commitment of Sexually Violent Predators") in the Health and Safety Code concerns civil matters. Evers nevertheless suggests that the Board of Pardons and Paroles has exclusive jurisdiction over Evers.

The purpose of the civil commitment statute is to protect the community from harm and to treat the individual who has been committed as a sexually violent predator. *See In re Commitment of Fisher*, 164 S.W.3d 637, 648, 651 (Tex. 2005); *see also* Tex. Health & Safety Code Ann. § 841.001 (West 2010) ("The legislature finds that a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence."). Section 841.081(a) provides that a commitment order "is

7

effective immediately on entry of the order, except that the outpatient treatment and supervision begins on the person's release from a secure correctional facility or discharge from a state hospital[.]" *See* Tex. Health & Safety Code Ann. § 841.081(a) (West 2010). The statute also provides that "the case manager may provide to the person instruction regarding the requirements associated with the order, regardless of whether the person is incarcerated at the time of the instruction." *Id.* § 841.081(b) (West 2010). These provisions indicate the trial court has jurisdiction to sign an effective commitment order despite the restraint of incarceration, and that treatment and supervision begin on "release from a secure correctional facility." This would indicate that "anticipated release date" in this context means the anticipated date for "release from a secure correctional facility." Essentially, accepting Evers's arguments would require that we read into these provisions an exception for those individuals released from a secure correctional facility but on parole. We do not believe that would be consistent with the meaning of the statutory provisions.

RIPENESS

In his motion for rehearing, Evers raises a jurisdictional challenge based on ripeness. "Ripeness 'is a threshold issue that implicates subject matter jurisdiction . . . [and] emphasizes the need for a concrete injury for a justiciable claim to be presented.'" *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000) (quoting *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)); *see*

8

*also Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011). Ripeness focuses on when the action may be brought. *Waco Indep. Sch. Dist.*, 22 S.W.3d at 851-52. In determining whether a controversy is ripe for adjudication, the court considers whether the case involves contingent or uncertain future events which may not occur as anticipated or may not occur at all. *Patterson*, 971 S.W.2d at 442-43; *In re Commitment of Shaw*, 117 S.W.3d 520, 523 (Tex. App.—Beaumont 2003, pet. denied). "The ripeness doctrine avoids premature adjudication on a hypothetical set of facts." *McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 232 (Tex. 2001).

Section 841.021 is part of an administrative process applicable to a person who is anticipated to be released from a secure correctional facility and who may be a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.021(a), 841.081. Evers does not contend TDCJ failed to give notice under section 841.021 or that the remainder of the administrative process was not followed. He argues the case was not ripe, because of his interpretation of the phrase "anticipated release date" in section 841.021(a).

This Court addressed a ripeness argument in *In re Commitment of Robertson*, 2010 WL 3518509, at **12-13. The State filed a petition to commit Robertson. Approximately a month and a half later, he was charged with two offenses he committed while incarcerated. Robertson received a four year sentence. Less than a year later, he filed a motion to dismiss the petition to commit him as a sexually violent predator. He argued that because his release from prison was not imminent, the SVP case was not ripe and the

9

trial court lacked jurisdiction. This Court rejected Robertson's ripeness jurisdictional challenge. *Id.*

As in *Robertson*, the ripeness argument here has no merit. Whether the person is convicted of another offense after the State files a petition seeking civil commitment, as was the case in *Robertson*, or whether a person is released on parole or released unconditionally, there is nothing in sections 841.021, .022, .023, or .041 that indicates the Legislature intended to divest the trial court of jurisdiction. *See Robertson*, 2010 WL 3518509 at *13. We are not persuaded by Evers's ripeness and jurisdictional arguments, or his arguments concerning the "release" date. We overrule appellant's challenges to the trial court's jurisdiction.

SUFFICIENCY OF THE EVIDENCE

The State must prove beyond a reasonable doubt that the person to be committed under the statute is a sexually violent predator. *See* Tex. Health & Safety Code Ann. § 841.062(a) (West 2010); *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). A person is a "sexually violent predator" if the person: "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." Tex. Health & Safety Code Ann. § 841.003(a) (West 2010).

In a legal sufficiency challenge, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond

10

a reasonable doubt, the elements required for commitment under the SVP statute. *See In re Commitment of Mullens*, 92 S.W.3d at 885. A factual sufficiency challenge to an SVP commitment order requires this Court to weigh the evidence to determine whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice so great that we are compelled to grant a new trial. *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

In issues two and three, Evers argues the evidence is insufficient to support a finding that he is likely to commit a predatory act of sexual violence while he is on parole supervision. Relying on Chapter 508 in general and section 508.142(e)(2) in particular, Evers contends that the Board of Pardons and Paroles "should be considered the superior institutional actor to make the call on whether appellant will be dangerous[,]" and he maintains that the question is whether Chapter 508 "permits any further fact finding by another fact finder under Chapter 841" while a person is on SISP parole.

Evers asserts that, because section 508.141(e)(2) of the Government Code requires a finding by the parole board that a person is "able and willing to fulfill the obligations of a law-abiding citizen[,]" the parole board must have found he will not engage in a predatory act of sexual violence. *See* Tex. Gov't Code Ann. § 508.141(e)(2). Section 508.141 makes no reference to a behavioral abnormality, a requirement for civil commitment under Chapter 841. *See* Tex. Gov't Code Ann. § 508.141; *see also* Tex. Health & Safety Code Ann. § 841.002(2) (West Supp. 2012), § 841.003(a). The SVP

statute was enacted because there are persons with a behavioral abnormality. *See* Tex. Health & Safety Code Ann. § 841.001. Chapter 841 does not assign a role to the Board of Pardons and Paroles in making that determination. The civil commitment statute requires compliance with the commitment order. We are not persuaded by the suggestion that Chapter 508, in effect, replaces Chapter 841. Civil commitment and parole are separate processes with separate purposes.

Evers does not directly challenge the finding that he has a behavioral abnormality. He limits his focus to his contention that the State had to show he would likely engage in a predatory act of sexual violence while he is on SISP parole. He asserts, in effect, that the parole panel's belief that a person is "able and willing to fulfill the obligations of a law-abiding citizen" is the functional equivalent of a finding that a person is not likely to "engage in a predatory act of sexual violence." *See* Tex. Gov't Code Ann. § 508.141(e) ("parole panel believes"). The State contends "[a] person may be able and willing, but still be not very likely or very successful." The State's response suggests that while the Board may believe a person is "able" and "willing" to follow the law, he still may have a behavioral abnormality that puts him at an increased risk requiring commitment under the SVP statute.

A belief by the Board is not the functional equivalent of a finding that a person does not have a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. The Board does not make that analysis or determination, because the

12

statute does not give the Board that task. As one Court has noted, "A finding that a person suffers from an emotional or volitional defect so grave as to predispose him to threaten the health and safety of others with acts of sexual violence entails a determination that he has 'serious difficulty controlling behavior.'" *In re Commitment of Browning*, 113 S.W.3d 851, 863 (Tex. App.—Austin 2003, pet. denied). The SVP civil commitment statute addresses the released person's increased risk within the context of the statutory definition of behavioral abnormality. The granting of parole does not exclude the possibility of civil commitment.

Furthermore, nothing in the civil commitment statute limits the scope of the records reviewed by the experts to those records relating only to the time Evers has spent on SISP parole. Although the jury could consider Evers's record while on SISP parole, the jury was not confined to consideration of only that time frame. *See generally* Tex. Health & Safety Code Ann. §§ 841.023(a), 841.142 (West Supp. 2012); §§ 841.061, 841.062 (West 2010).

Evers had previously been convicted in Texas of six offenses of burglary of a habitation with intent to commit rape. There was also evidence of a rape of a woman in California. The experts reviewed records indicating Evers raped seven women from 1979-1980. He was sentenced in 1982 for the six Texas offenses and paroled in 1990. In 1991, Evers was convicted of burglary of a habitation and was returned to prison. He was released on SISP parole in March 2011. *See* Tex. Gov't Code Ann. § 508.317(d) (Super-

13

intensive supervision program "must provide the highest level of supervision provided by the department.").

The State's experts testified that Evers suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Thorne, a clinical and forensic psychologist, diagnosed Evers with paraphilia not otherwise specified (a sexual disorder), a depressive disorder, a long-standing psychotic disorder, and an antisocial personality disorder (defiance of authority, violations of laws or expectations of society). Dr. Arambula, a psychiatrist, made similar diagnoses, in addition to diagnoses of polysubstance abuse by history and a form of paraphilia with features of sadism.

The jury heard evidence regarding Evers's criminal history (which included multiple rapes involving the use of threats, violence, and weapons); actuarial test results (with scores indicating a high risk of reoffending); victimization of women; antisocial personality disorder; sadistic behavior; and a history of drug abuse. The jury also heard testimony regarding Evers's conduct in prison. He had forty-seven disciplinary infractions. Dr. Thorne testified Evers was still exhibiting in prison the sexual deviancy that he exhibited outside prison. Based on significant risk factors, Dr. Arambula testified that Evers is at substantial risk to do what he has done in the past.

Arnold Pruitt, Evers's parole officer on SISP, testified Evers had only been on the supervision for approximately a month, and that he had complied with the probation requirements during that time. Pruitt explained that parolees usually comply for a month.

He indicated that those on SISP parole usually begin having problems with the supervision at about three months, but that parolees over the age of fifty typically comply with the supervision requirements. Pruitt also testified he has had parolees violate the intensive supervision even though they were GPS monitored.

Evers maintains that at age fifty he is a changed man. He has completed his GED, taken some college courses, and completed drug and alcohol classes and the Changes class in prison. He testified that the fourteen female officers who reported instances of his sexual misconduct were lying.

Considering all the evidence in the light most favorable to the verdict, we conclude the jury could reasonably find beyond a reasonable doubt that Evers has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. The record does not reflect a risk of injustice that compels granting a new trial. The evidence is sufficient to support the jury's verdict.

Appellant's issues are overruled. The trial court's judgment is affirmed.

AFFIRMED.

_____
DAVID GAULTNEY
Justice

Submitted on July 19, 2012
Opinion Delivered December 13, 2012

Before McKeithen, C.J., Gaultney and Kreger, JJ.

15